UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:11-CR-20393 ALTONAGA/Simonton

UNITED STATES OF AMERICA

vs.

ALEXANDER MCQUEEN,
GURUBA GRIFFIN,
SCOTT BUTLER, and
STEVEN DAWKINS

            **Defendants.**
_____/

### UNITED STATES' NOTICE OF INTENT TO USE EVIDENCE PURSUANT TO RULE 404(b) OF THE FEDERAL RULES OF EVIDENCE

The United States hereby serves notice of its intent to introduce into evidence in its case in chief: 1) evidence of institutional practice and defendants Butler and Griffin's knowledge, sanctioning, orchestration, and observation of organized fights between inmates; 2) evidence that defendants Butler and Griffin regularly carried broomsticks as weapons, and, 3) evidence that defendant Griffin routinely disciplined inmates by subjecting them to the "ice box," as further described below. It is the government's position that much of the noticed evidence does not constitute prior bad act evidence and therefore, is admissible in its case in chief without respect to Fed. R. Evid. 404(b) . Out of an abundance of caution, however, the government is serving Rule 404(b) notice of its intention to use such evidence at trial. The evidence was provided to all defendants in this case in July, 2011, in the government's initial discovery disclosure. Pursuant to Federal Rule of Evidence 404(b), the United States will use this evidence for the limited purposes of establishing willfulness, motive, and intent.

## I.  RELEVANT FACTS

      A.  Incident - Relevant Facts to this Motion

On the evening of February 25, 2009, inmates Marvin Woods and Judelin Bertrand fought in an unoccupied cell.  Shortly thereafter, while conducting a final prisoner count, defendant Griffin encountered Woods bleeding from his head in the unoccupied cell.  Defendant Griffin questioned Woods about the injury and accused him of fighting.  When Woods would not tell defendant Griffin who Woods had been fighting, defendant Griffin ordered all inmates in Quad Three of B Dorm of the South Florida Reception Center ("SFRC") into a common area known as the "day room."  Defendant Griffin told the inmates that he was going away and when he came back they had better tell him who Woods fought or there were going to be problems.

Defendant Griffin then left the Dorm and returned approximately ten minutes later with subjects McQueen, Dawkins, and Butler.  Again, the inmates did not disclose the fighter's identity.  Woods was summoned to the common area but refused to say anything, and defendant McQueen struck Woods repeatedly with the broom handle about the legs and torso area.  When Woods stated, "Don't hit me," McQueen grabbed Woods and slammed him to the ground, causing a bloody laceration to the top of Woods's head.  At this time, Judelin Bertrand admitted that he was the one who fought with Woods.  Defendant Griffin reiterated to the inmates that fighting was allowed but only in a sanctioned manner -- three rounds of three minutes each supervised by the officers.

Defendant Griffin's statement will be explained by the testimony of multiple witnesses who will testify that upon arrival at SFRC, they were informed by other inmates and guards, including defendant Griffin that fighting between inmates was permitted, but only when a certain procedure was followed.  Inmates were instructed that if a problem arose, the inmate should

2

inform a correctional officer and defendant Griffin would allow a "three and three" match, wherein the inmates with a problem would fight three rounds of three minutes each. The witnesses will further testify that these fights were often conducted on Fridays and were also referred to as "Friday night fights." Evidence will show that defendant Butler knew of and watched these fights and that defendant Griffin conducted, supervised, and watched these fights.

After learning that Bertrand and Woods had fought outside of the "three and three" format, Griffin ordered Woods and Bertrand to fight in an "official" match. Because Woods was already hurt, Woods and Bertrand did not engage in a '"three and three" as instructed, and Woods was sent to shower. Defendants Griffin, McQueen, Butler and Dawkins then engaged in a course of conduct in which other inmates were repeatedly hit or forced to fight.

B. Other Relevant Facts

The government seeks to admit evidence, in the form of testimony by witnesses, most of whom will already be testifying, that defendants Butler and Griffin routinely wielded broomsticks in Dorm B and used the broomsticks to strike inmates for perceived and minor infractions such as eye-rolling and improper bed-making. The government also seeks to introduce evidence that defendant Griffin routinely subjected inmates to other inappropriate means of punishment. Specifically, witnesses will testify that when inmates were perceived to have broken the rules or when inmates angered defendant Griffin, defendant Griffin would "icebox" the inmates -- a punishment where inmates were instructed to submerge their arms in a cooler full of ice and water for approximately fifteen minutes. If inmates removed their arms from the cooler before the specified time, defendant Griffin would strike the inmates, sometimes with a broomstick. At times, defendant Griffin would remove inmates' hands, pour salt on the hands, then re-submerge the inmates hands or order inmates to alternate dunking their arms

between cold and hot water; both practices, according to defendant Griffin's statements to the inmates, intended to increase the pain they experienced.

## II. ANALYSIS

### A. Fed. R. Evid. 404(b)

Federal Rule of Evidence 404(b) states in relevant part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Fed. R. Evid. 404(b).

Rule 404(b) is a rule of inclusion rather than exclusion. See United States v. Perez-Tosta, 36 F.3d 1552, 1562 (11th Cir. 1994) (404(b) is a rule of inclusion, and such evidence should not be excluded lightly); United States v. Cohen, 888 F.2d 770, 776 (11th Cir. 1989) (Rule 404(b) is a rule of inclusion); United States v. Eckhardt, 466 F.3d 938, 946 (11th Cir. 2006) (same).

For evidence to be admissible under Rule 404(b), it must: 1) be relevant to an issue other than the defendant's character; 2) be sufficient to support a finding that the defendant committed the act in question; and 3) its probative value must not be substantially outweighed by unfair prejudice and it must meet the other requirements of Rule 403. United States v. Edouard, 485 F.3d 1324, 1344 (11th Cir. 2007); United States v. Calderon, 127 F.3d 1314, 1330-31 (11th Cir. 1997), see also United States v. Jones, 913 F.2d 1552, 1566 (11th Cir. 1990); Cohen, id.

Rule 404(b) does not govern the admission of evidence which is intrinsic to the charged offense. See e.g., Edouard, 485 F.3d at 1344; United States v. Spoerke, 586 F.3d 1236, 1250-51 (11th Cir. 2009). Evidence not governed by Rule 404(b) includes evidence which: (1) arises from the same transaction or transactions as the charged conduct; (2) is necessary to complete the story of the crime; or (3) is inextricably intertwined with the evidence regarding the charged

4

offense. Id.; see also United States v. Williford, 764 F.2d 1493, 1499 (11th Cir.1985) (Rule 404(b) does not govern evidence that "forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury."); United States v. Smith, 322 Fed. Appx. 876, 879 (11th Cir. 2009) ("[A]n uncharged crime that explains the context, motive, and set-up of the crime properly is admitted if linked in time and circumstances with the charged crime or forms an integral and natural part of an account of the crime.").

### B. Evidence of "three and three" fights and "Friday night fights" are admissible

#### 1. Evidence of "three and three" fights and "Friday night fights" is not prior bad acts evidence but rather is intrinsic evidence, not governed by Rule 404(b)

The government will introduce evidence in the form of witness testimony that "three and three" fights and "Friday night fights" were a well-known phenomenon to the inmate victims and witnesses. The government will also introduce witness testimony that defendant Griffin informed inmates of this practice and regularly took charge of and supervised these fights and that defendant Butler had knowledge of and watched said fights. This evidence is not evidence of other bad acts by defendants Griffin and Butler, but rather is evidence of institutional practices in general and specific to Griffin and Butler, in particular, which complete the story of the charged conspiracy. Therefore, evidence of these fights is intrinsic to the charged conspiracy, is admissible, and is not governed by Rule 404(b).

The fight evidence is necessary to complete the story of the crime. The events of February 25, 2009, transpired because defendant Griffin learned that Woods and Bertrand fought, without his knowledge and outside the established (and unconstitutional) procedures at the institution. After Bertrand admitted that he fought Woods, defendant Griffin specifically stated that fighting was permitted but must be done in a three minute, three round, supervised

5

format.  This comment and defendant Griffin's anger that a fight had taken place outside these procedures will not make sense to the jury unless placed in the specific context that inmates and officers of Dorm B understood that any inter-inmate disputes were to be handled in "three and three" fights conducted and supervised by officers.  See Williford, 764 F.2d at 1499 (Rule 404(b) does not govern evidence that "forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury."); United States v. LaRosa, 236 Fed. Appx. 584, 589 (11th Cir. 2007) (evidence of possible prior alien smuggling was necessary to complete story for jury because it "demonstrated the defendants' possible motivation for being in a go-fast boat at night without the boat's lights on, for fleeing federal officers by maneuvering the boat in a dangerous manner, and for resisting arrest after repeated warnings.").  The evidence is also necessary to explain that Bertrand and Pressley were forced to fight in conformance with the "three and three" policy because Pressley stated that he had a problem with Bertrand.  In addition, the fight evidence completes the story for the jury as to why defendants Griffin and Butler struck Bertrand and Pressley during their fight -- because they were not complying with the established rules of "three and three" fights and were "clutching up" and grabbing each other, rather than punching each other as required.  Evidence of statements and occurrences of "three and three" fights and "Friday night fights" complete the story and explain the context of the charged conspiracy; it is, therefore, intrinsic evidence that is admissible without respect to any requirements set forth by Rule 404(b).

> **2. Even if the court were to find that evidence of "three and three" fights and "Friday night fights" are prior bad acts, the evidence is admissible under Rule 404(b)**

Even if the court were to consider the fight evidence to be extrinsic to the charged conspiracy, the evidence is admissible under 404(b) because it is tends to prove the defendants'

6

motive, willfulness, and intent. Fed. R. Evid. 404(b). The indictment lists as overt acts, among other things, that defendant McQueen hit Woods with a broom, that defendants McQueen, Griffin, Butler, and Dawkins forced Bertrand and Pressley to engage in a fistfight, that Griffin struck Bertrand, that Butler struck and otherwise physically assaulted Pressley, and that defendants McQueen, Griffin, Butler, and Dawkins observed each others' unlawful actions without intervening on behalf of the inmates. Evidence of the practice of holding "three and three" fights and "Friday night fights" is admissible under Rule 404(b) to explain the motive, opportunity, and intent of the defendants in taking these specified actions (or inaction). Fed. R. Evid. 404(b). For instance, McQueen was partially motivated to hit Woods because he broke unwritten rules by fighting with Bertrand outside the "three and three" policy. As stated above, the defendants' motive in forcing Bertrand and Pressley to fight was to conform to the "three and three" policy. Finally, defendants Griffin and Butler were motivated to strike Bertrand and Pressley because they were not complying with the established rules of "three and three" fights and were "clutching up" and grabbing each other. Evidence of "three and three" fights and "Friday night fights," the rules of such fights, and the defendants' knowledge and participation in such fights, is evidence of their motivation in committing some of the charged overt acts.

Evidence of these fights is also relevant to the issue of opportunity, willfulness, and intent. The charged course of conduct -- multiple defendants hitting multiple inmates, with broomsticks and with their hands, over an extended period of time and forcing inmates to fight each other -- is an extreme one which a juror may have difficulty understanding taking place in a controlled setting like a correctional facility. Evidence of these fights will demonstrate an ongoing course of conduct in the institution which gave the defendants the opportunity to carry out the charged conduct. See e.g., United States v. Bennett, 368 F.3d 1343, 13050 (11th Cir.

2004) (defendant's prior conduct of manufacturing methamphetamine, the same type as conduct charged, was relevant to prove motive, opportunity, intent and knowledge), vacated on other grounds, Bennett v. United States, 125 S.Ct. 1044 (2005); Milton v. Roe, 40 Fed. Appx. 377, 378 (9th Cir. 2002) (upholding state court admission of other act evidence because it "permitted the jury to draw the inference that [defendant's] physical and sexual domination of the household provided him with the opportunity to commit the charged offenses without detection for nearly four years).

The fight evidence is also relevant to the defendants' willfulness in joining the conspiracy and relevant to whether the defendants had the specific intent to violate rights of inmates as the object of that conspiracy. In proving that the defendants conspired to violate the civil rights of the inmates as charged in Count One, the government must prove that the defendants willfully joined the conspiracy with the specific intent to violate the inmates' rights, that is, that the defendants voluntarily joined the conspiracy, knowing its unlawful purpose was to subject the inmates to the unnecessary and wanton infliction of pain and to be deliberately indifferent to such infliction. 18 U.S.C. § 241; Anderson v. United States, 417 U.S. 211, 223 (1974) (to prove violation of §241, "the prosecution must show that the offender acted with a specific intent to interfere with the federal rights in question."); Hope v. Pelzer, 536 U.S. 730, 737 (2002) ("The unnecessary and wanton infliction of pain … constitutes cruel and unusual punishment."); Hudson v. McMillian, 503 U.S. 1 (1992) (prison supervisor was liable in situation where he "expressly condoned" an assault on an inmate); Byrd v. Clark, 783 F.2d 1002, 1007 (11th Cir. 1986) (duty upon both supervisory and non-supervisory officers to stop illegal assaults by fellow officers). Cf. Eleventh Cir. Pattern Jury Instruction 13.1 (second element of § 371 is that defendant knew unlawful purpose of conspiracy and willfully joined it).

Evidence of the defendants' similar actions in the past is probative of their intent. See United States v. Hewes, 729 F.2d 1302, 1314 (11th Cir. 1984) (if an extrinsic act is similar to the charged offense in that both require the same type of intent, then the extrinsic evidence is highly relevant to the issue of intent); United States v. Beechum, 582 F.2d 898, 911 (11th Cir. 1978) (same); United States v. Mitchell, 666 F.2d 1385, 1389 (11th Cir. 1982) (same). Thus, any evidence bearing on the defendants' intent with respect to the unnecessary and wanton infliction of pain and any deliberate indifference thereof is relevant to the mens rea the government must prove to prevail on Count One.

Here, evidence of defendant Griffin's prior knowledge, arrangement of, and participation in, fights between inmates involves the same intent as charged and demonstrates his specific intent to similarly deprive inmates of their rights to be free from unnecessary and wanton force (whether the force was directly or indirectly inflicted by himself and co-defendants). The evidence of defendant Griffin's involvement with the fights and evidence of defendant Butler's knowledge and observation of prior fights is also relevant to their deliberate indifference as charged. Specifically, their past condonation of this practice demonstrates their past deliberate indifference to inmate fights, the same intent charged. Moreover, their past involvement in the unnecessary and wanton infliction of pain and deliberate indifference thereof also bears on their willfulness in joining the charged conspiracy because the object of said conspiracy is the same infliction of pain and deliberate indifference to such infliction.

### 3. The fight evidence is not unduly prejudicial

Finally, under Rule 403, the probative value of the fight evidence is not substantially outweighed by confusion or unfair prejudice. In general, the exclusion of otherwise admissible 404(b) evidence is disfavored, as such exclusion "is an extraordinary remedy which should be used only sparingly" and the balance "should be struck in favor of admissibility." United States v. Smith, 459 F.3d 1276, 1295 (11th Cir. 2006) (internal quotes omitted); Edouard, 485 F.3d at 1344 n. 8 ("Rule 403 is an extraordinary remedy, which should be used only sparingly, and the balance should be struck in favor of admissibility.") (quotation marks, citation, and brackets omitted). In evaluating the probative value of the proffered extrinsic act, a "common sense assessment of all the circumstances surrounding the extrinsic offense" must be used, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, and temporal remoteness. Calderon, 127 F.3d at 1332.

As explained above, the fight evidence is intrinsic to the crime and is necessary to complete the story of the crime for the jury's understanding. In addition, under Rule 404(b), the prosecutive need for the fight evidence is strong because the evidence is highly probative as to issues of motive, willfulness, intent, and opportunity. The government must be able to demonstrate that the defendants willfully agreed to deprive the inmates of their rights. The fight evidence is highly probative of the willfulness of defendants Butler and Griffin in joining the conspiracy and their specific intent to deprive inmates of their right to be free from cruel and unusual punishment. The evidence also bears on the defendants' motivation and opportunity.

At the same time, the fight evidence is not unduly prejudicial. United States v. Jackson, 761 F.2d 1541, 1544 (11th Cir. 1985) (finding no error in admission of extrinsic act evidence where "[a]ny prejudicial effect was due merely to the fact that the evidence was incriminating.").

10

The Eleventh Circuit has recognized that the potential to incite the jury to an irrational decision "is the primary target" of the Rule 403 prejudice inquiry in the context of Rule 404(b) extrinsic acts evidence. Hewes, 729 F.2d at 1314. Thus, where "the extrinsic offenses [are] not of such a heinous nature that they [are] likely to incite the jury to an irrational decision," the possibility of prejudice is "slight." Id. No such danger exists here where the fight evidence is not extreme in nature, is substantially similar to the charged conduct, where the evidence is not remote in time from the charged conduct, and where no new or additional witnesses will be needed to present the evidence. Calderon, 127 F.3d at 1332.

### C. Evidence that defendants Griffin and Butler regularly carried and used broomsticks against inmates is admissible as evidence of opportunity, intent, and plan

The government also seeks to admit testimony by witnesses that defendants Butler and Griffin routinely wielded broomsticks in Dorm B and used the broomsticks to strike inmates for perceived and minor infractions such as eye-rolling and improper bed-making. This evidence will be provided by witnesses who will already be testifying about the charged conduct as well as the testimony of one inmate who reported being beaten by Defendant Butler with a broomstick in 2007 (Bates stamp 000268) and who was not present for the charged conduct. This evidence is relevant to the issue of opportunity, willfulness, and intent. The routine use of broomsticks by defendants Butler and Griffin to threaten and punish inmates demonstrates that *all* of the defendants had the opportunity to use broomsticks in the same manner in that the evidence establishes that the broomsticks were readily available as weapons to any officer with access to the cleaning supplies.

The broomstick evidence is also relevant to defendants Butler and Griffins' willfulness and intent. The prior use of broomsticks to threaten and strike inmates is the same conduct and

involves the same intent as the overt acts charged against defendant Griffin; therefore, it is relevant to his intent in this case. See Hewes, 729 F.2d at 1314; Beechum, 582 F.2d at 911; Mitchell, 666 F.2d at 1389. The evidence is also relevant to defendant Griffin's willfulness in joining the conspiracy because the government must prove that defendant Griffin joined the conspiracy knowing that its object was to violate the inmates' civil rights. Defendant Griffin's prior unnecessary and wanton use of broomsticks to threaten and strike inmates is relevant in that it has the tendency to make it more probable that Griffin willfully joined the conspiracy with that same intent. The prior use of broomsticks by defendant Butler is relevant to his willfulness in joining the conspiracy, in which defendants Griffin and McQueen used broomsticks to threaten and strike inmates, and his deliberate indifference in failing to stop Griffin and McQueen from striking inmates with broomsticks. The evidence demonstrates that defendant Butler participated in and condoned such activity in the past, contradicting any possible claims by Butler that he found the use of broomsticks in the conspiracy to be repugnant and did not willfully join in it.

The probative value of the broomstick evidence is high while the risk of undue prejudice is low. The prior use of broomsticks to threaten and strike inmates is not such extreme conduct that it will motivate the jurors to convict the defendants in this case, simply to punish defendants Butler and Griffin for their prior conduct. See Hewes, 729 F.2d at 1314 (noting that the primary concern when evaluating prejudice is whether the evidence is "of such a heinous nature that they [are] likely to incite the jury to an irrational decision."). In fact, the evidence of prior broomstick use is less severe than the charged broomstick use in that the government will not present any evidence of injury from the prior incidents. In addition, the broomstick evidence is similar to the conduct charged, is not remote in time to the charged conduct, and will only require one additional witness to testify. See Calderon, 127 F.3d at 1332. Because the broomstick evidence

is not so "heinous" as to substantially outweigh its significant probative value, the broomstick evidence should be admitted.

### D. Evidence that defendant Griffin routinely subjected inmates to inappropriate punishment via "icebox" is admissible as evidence of willfulness and intent

The government also seeks to admit evidence the defendant Griffin routinely subjected inmates to other inappropriate means of punishment in the form of the "icebox," as described above. Defendant Griffin's prior actions are highly probative of his willfulness in joining the conspiracy and his specific intent to deprive inmates of their constitutional rights. See Hewes, 729 F.2d at 1314 (if an extrinsic act is similar to the charged offense in that both require the same type of intent, then the extrinsic evidence is highly relevant to the issue of intent); Beechum, 582 F.2d at 911; Mitchell, 666 F.2d at 1389. The government must prove that the defendant willfully joined the conspiracy knowing its objective. Defendant Griffin's practice of subjecting inmates to the "ice box" was a completely gratuitous infliction of pain which had no reasonable application or necessary institutional purpose. This prior knowing and willful violation of inmates' constitutional rights through the use of unnecessary, malicious, and wanton infliction of pain is the same kind of intent at issue in the charged case and is highly probative of his intent to join the charged conspiracy, which also involved the unnecessary and wanton infliction of pain, applied without good faith and with no legitimate purpose. See id.

As with the above-described conduct, the "ice box" evidence will not unduly prejudice the defendant. While defendant Griffin's conduct was certainly reprehensible, it is not so heinous as to unduly sway the jury to act irrationally. See Hewes, 729 F.2d at 1314. The majority of the injuries suffered or observed as a result of Griffin's use of the ice box were limited to substantial pain and thus, the extrinsic evidence is no more heinous in nature than the

evidence for the indicted incident. Indeed, as the indicted incident involves visible injuries to numerous victims, whereas the 404(b) evidence only involves pain inflicted on an inmate, it is clear that the 404(b) evidence is substantially less inflammatory than the evidence for the indicted incident. Finally, the "icebox" evidence involves the same intent as the conduct charged, is not remote in time to the charged conduct (all within months), and will not require any additional witnesses to testify. See Calderon, 127 F.3d at 1332. Thus, the 404(b) evidence is unlikely to incite the jury to an irrational decision and should be admitted.

### III.  CONCLUSION

The government hereby gives notice of intention that it may introduce evidence of other crimes, wrongs, or acts of the defendant at a trial of this matter pursuant to Fed. R. Evid. 404(b). For all the reasons stated above, said evidence is properly admissible as evidence intrinsic to the incident and pursuant to Rule 404(b) of the Federal Rules of Evidence.

Respectfully submitted,

THOMAS PEREZ
ASSISTANT ATTORNEY GENERAL

s/ Henry C. Leventis
Henry C. Leventis
Court No. A5501633
Trial Attorney
Civil Rights Division
United States Department of Justice
601 D Street, NW, Rm 5810
Washington, D.C. 20004
Tel: (202) 514-5253
Fax: (202) 514-8336
Henry.leventis@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that, on September 15, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

s/ Henry Leventis<br>
Henry Leventis<br>
Trial Attorney